UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| WHITNEY BLAYRE SAENGER,<br><br>Plaintiff,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1]<br><br>Defendant. | Case No. CV 16-05195-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Whitney Blayre Saenger ("Plaintiff") appeals the Social Security Commissioner's final decision denying her application for Disability Insurance Benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is affirmed and this matter is dismissed with prejudice.

///

///

///

---

[1] On January 23, 2017, Berryhill became the Acting Social Security Commissioner. Thus, she is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

# I.
# BACKGROUND

Plaintiff filed an application for DIB on June 20, 2011, alleging disability beginning May 1, 2008. Administrative Record ("AR") 299-302. After her application was denied, she requested a hearing before an administrative law judge ("ALJ"), which was held on August 27, 2014. AR 33. At the hearing, the ALJ heard testimony by a vocational expert ("VE"), medical experts, and Plaintiff, who was represented by counsel. AR 35-60.

In a written decision issued September 8, 2014, the ALJ denied Plaintiff's claim for benefits. AR 10-21. She found that Plaintiff had severe impairments of endometriosis[2] and chronic pain syndrome ("CPS"). AR 12-14. The ALJ found non-severe impairments of temporomandibular joint disorder ("TMJ"), migraine headaches, and mycoplasma/Parvo B19.[3] AR 12-14. The ALJ also found that Plaintiff's complaints of restless leg syndrome and depression were not medically determinable. AR 14.

Taking her impairments into account, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC") to lift and/or carry ten pounds occasionally and less than ten pounds frequently, sit for four hours of an eight-hour workday, and stand or walk for one hour of an eight-hour workday. AR 15. The RFC covered the period between the alleged onset date,

---

[2] Endometriosis is a noncancerous disorder in which functioning endometrial tissue is implanted outside the uterine cavity. Robert S. Porter, M.D., et al., eds., The Merck Manual 2538 (Merck Research Labs., 19th ed. 2011) ("Merck").

[3] Parvovirus B19 Infection causes "mild constitutional symptoms and a blotchy . . . rash beginning on the cheeks and spreading primarily to exposed extremities. . . . [T]reatment is generally not needed." Mild joint pain and swelling may persist or recur. Merck at 2840. Mycoplasmas are "ubiquitous bacteria" that can cause pneumonia and other infections. Merck at 1279.

May 1, 2008, through the date last insured, December 31, 2008. AR 15. Based on the VE's testimony, the ALJ found that Plaintiff would be able to perform the requirements of her past relevant work as a research assistant, which did not require her to perform any work-related activities precluded by her RFC. AR 19. Thus, the ALJ found that Plaintiff was not disabled between May 1, 2008, and December 31, 2008. AR 20.

The Appeals Council denied review of the ALJ's decision. AR 1-5. This action followed.

## II.
## DISCUSSION

Plaintiff argues that the ALJ erred in: (1) not finding that her chronic fatigue syndrome ("CFS"),[4] fibromyalgia,[5] depression, and migraines were severe impairments; (2) improperly discounting the opinions of several physicians; (3) discounting testimony by Plaintiff and her mother; and (4) failing to consider whether "special conditions" rebutted the presumption that Plaintiff's past work constituted substantial gainful activity. See Joint Stipulation ("JS") at 3-6, 10-16, 24-25. For the reasons discussed below, the Court finds that the ALJ did not err.

### A.   The ALJ's Step-Two Findings
#### 1.   Relevant Facts

Plaintiff underwent surgery for endometriosis in December 2007—i.e., before her alleged onset date. AR 507-15. After the date last insured of

---

[4] Chronic fatigue syndrome is "long-standing, severe, disabling fatigue without demonstrable muscle weakness. . . . Depression, anxiety, and other psychologic diagnoses are typically absent." Merck at 3442.

[5] Fibromyalgia is a "disorder of unknown cause" characterized by general aching, muscle tenderness and stiffness, fatigue, and poor sleep. Merck at 375.

December 31, 2008, several physicians treated Plaintiff, and the ALJ took some of their opinions into consideration in formulating the RFC. AR 18. At Plaintiff's hearing, impartial medical expert Dr. Maxwell testified that Plaintiff suffered from endometriosis and CPS based on his review of the record. AR 45-46. He found that the impairments did not meet or equal a listing, but would create functional limitations of being "less than sedentary in the ability to lift and/or carry 10 pounds occasionally, less than 10 pounds frequently, sit for and/or walk for one hour." AR 46-47. Also at Plaintiff's hearing, psychological expert Dr. Peterson noted that Plaintiff lacked psychiatric records and that the only indication of mental impairments was a consulting examiner's suggestion that Plaintiff had a depressive disorder not otherwise specified. AR 49. He recommended that the ALJ not find a severe mental impairment. AR 50.

After reviewing the record, the ALJ found that Plaintiff "has a longstanding history of endometriosis and [CPS]." AR 16. She noted that CPS included Plaintiff's "constellation of symptoms" including fibromyalgia and CFS symptoms, and endometriosis included her nerve damage and chronic pelvic pain. AR 13. The ALJ confirmed that Plaintiff's account was "[c]onsistent with Dr. Maxwell's testimony," but that her symptoms are "complex, and her treating physicians did not uniformly diagnose [Plaintiff] with fibromyalgia or [CFS]." Id.

The ALJ noted that during the relevant period, the record showed that Plaintiff's migraines "would establish mild to no limits in the work place." AR 13. Though the ALJ acknowledged Plaintiff's migraine diagnosis from 2000, she found "very little additional treatment for migraines or evidence of ongoing symptoms or functional limitations during the relevant period" such that the record did not support finding a severe impairment. Id. The ALJ similarly dismissed claims of mycoplasma/Parvo B19, TMJ, and restless leg

4

syndrome for lack of evidence. AR 13-14. She also determined that clinical findings did not corroborate the "vague references" in the record to Plaintiff's depression or anxiety and noted Plaintiff's failure to seek treatment from a mental health professional during or close to the relevant period. AR 14. Thus, the ALJ found no medically determinable mental impairment. Id.

### 2. Applicable Law

"In step two of the disability determination, an ALJ must determine whether the claimant has a medically severe impairment or combination of impairments." Keyser v. Comm'r Soc. Sec. Admin., 648 F.3d 721, 725 (9th Cir. 2011). The existence of a severe impairment is demonstrated when the evidence establishes that an impairment has more than a minimal effect on an individual's ability to perform basic work activities. Webb v. Barnhart, 433 F.3d 683, 686-87 (9th Cir. 2005); Smolen v. Chater, 80 F.3d 1273, 1290 (9th Cir. 1996); 20 C.F.R. §§ 404.1520(c), 404.1521(a). The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs," which include physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling. 20 C.F.R. § 404.1521(b). The inquiry at this stage is "a de minimis screening device to dispose of groundless claims." Smolen, 80 F.3d at 1290 (citing Bowen v. Yuckert, 482 U.S. 137, 153-54 (1987)). An impairment is not severe if it is only a slight abnormality with "no more than a minimal effect on an individual's ability to work." Social Security Ruling ("SSR") 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988). A "finding of no disability at step two" may be affirmed where there is a "total absence of objective evidence of severe medical impairment." Webb, 433 F.3d at 688 (reversing a step-two determination "because there was not substantial evidence to show that [the claimant's] claim was 'groundless'").

///
///

### 3. Analysis

Plaintiff claims that the ALJ improperly labeled her CFS and fibromyalgia as CPS and should have found her migraines and mental impairments were severe. JS at 11-13. However, the record lacked consensus as to what caused Plaintiff's chronic pain, and there was no objective basis to find that Plaintiff's pain should have been categorized as anything other than CPS. For example, Plaintiff did not confirm fibromyalgia in either way necessary to find a medically determinable impairment: She failed to present evidence of trigger point tenderness or show that "other disorders that could cause the[] repeated manifestations of [fibromyalgia] symptoms, signs, or co-occurring conditions were excluded." SSR 12-2P. Chronic pain is defined as "pain that persists after an injury heals." Chaudhry v. Astrue, 688 F.3d 661, 665 n.8 (9th Cir. 2012) (citation omitted). Plaintiff's pain persisted after her surgery had healed, and CPS was not excluded by the record. The ALJ thus based the CPS diagnosis on substantial evidence.

To the extent that the ALJ should have separately addressed CFS and fibromyalgia rather than grouping their constellation of symptoms as CPS, any error was harmless. See Robbins v. Soc. Sec. Admin., 466 F.3d 880, 885 (9th Cir. 2006) (stating that error is harmless if it is inconsequential to the ultimate determination). Where an ALJ finds at least one severe impairment and continued the sequential analysis, considering all of a claimant's symptoms in formulating an RFC, an error in labeling a condition as non-severe is harmless. Lewis v. Astrue, 498 F.3d 909, 911 (9th Cir. 2007) (holding that any error in neglecting to list bursitis at step two was harmless, because the ALJ took bursitis limitations into account at step four). Here, the ALJ continued to step four and considered all of Plaintiff's symptoms in formulating her RFC. AR 19-20. The ALJ noted that Plaintiff's past relevant work as a research assistant could be performed even with Plaintiff's RFC restrictions. AR 20. Her former

work allowed her to work from the comfort of her bed at any time that she felt well and had no hours requirement such that Plaintiff could complete her work as her impairments allowed. AR 48-49. Because the ALJ considered the symptoms that Plaintiff attributed to CFS and fibromyalgia, any error was harmless. See Baldwin v. Astrue, No. 09-513, 2010 WL 1946902, at *1-3 (C.D. Cal. May 10, 2010) (finding error harmless where ALJ attributed plaintiff's fibromyalgia symptoms to a different diagnosis). "[T]he ALJ actually considered the reported physical effects of these conditions in arriving at the disability determination" such that failing to label them as severe did not ultimately affect Plaintiff's case. Schow v. Astrue, 272 F. App'x 647, 650 (9th Cir. 2008).

To the extent that Plaintiff argues that the ALJ should have found her migraines and mental impairments were severe, she failed to present objective evidence suggesting that they were medically determinable during the relevant period. Records regarding migraines and mental impairments came from outside the relevant period of May 1, 2008, through December 31, 2008, and thus were not probative. See, e.g., AR 585, 589-90, 1256; see also Turner v. Comm'r, Soc. Sec. Admin., 613 F.3d 1217, 1224 (9th Cir. 2010) (approving of ALJ's decision not to take medical opinion into account, where examiner did not examine plaintiff between alleged onset date and date last insured). The records Plaintiff cites in the Joint Stipulation all fall well outside this period. JS at 12 (citing AR 585, 588, 623, 651, 1256). Moreover, "although Plaintiff's primary-care physicians diagnosed and prescribed low-dose medication for depression and anxiety, very few objective clinical findings supported those diagnoses, suggesting that Plaintiff's mental-health treatment was based on her subjective complaints." Hilton v. Colvin, No. 15-0806, 2016 WL 1072078, at *3 (C.D. Cal. Mar. 17, 2016), accepted by 2016 WL 1065710 (C.D. Cal. Mar. 17, 2016). Plaintiff had not sought treatment from a mental-health professional

regarding depression or anxiety. AR 49-50. Thus, the ALJ did not err in finding that Plaintiff's mental impairments were not medically determinable. See Febach v. Colvin, 580 F. App'x 530, 531 (9th Cir. 2014). As the ALJ's severity determination was based on substantial evidence, this claim does not warrant reversal or remand.

## B. Physicians' Opinions

### 1. Applicable Law

Three types of physicians may offer opinions in Social Security cases: those who treated the plaintiff, those who examined but did not treat the plaintiff, and those who did neither. See 20 C.F.R. § 404.1527(c);[6] Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (as amended Apr. 9, 1996). A treating physician's opinion is generally entitled to more weight than an examining physician's opinion, which is generally entitled to more weight than a

---

[6] Social Security Regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 805 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 15-05925, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"); cf. Revised Medical Criteria for Determination of Disability, Musculoskeletal System and Related Criteria, 66 Fed. Reg. 58010, 58011 (Nov. 19, 2001) ("With respect to claims in which we have made a final decision, and that are pending judicial review in Federal court, we expect that the court's review of the Commissioner's final decision would be made in accordance with the rules in effect at the time of the final decision."). Accordingly, the Court applies the version of § 404.1527 in effect from August 24, 2012 to March 26, 2017.

nonexamining physician's. Lester, 81 F.3d at 830. When a treating or examining physician's opinion is uncontroverted by another doctor, it may be rejected only for "clear and convincing reasons." See Carmickle v. Comm'r Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (citing Lester, 81 F.3d at 830-31). Where such an opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id.; see also Garrison v. Colvin, 759 F.3d 995, 1012 (9th Cir. 2014). Moreover, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). The weight accorded to a physician's opinion depends on whether it is consistent with the record and accompanied by adequate explanation, the nature and extent of the treatment relationship, and the doctor's specialty, among other factors. § 404.1527(c).

**2. Analysis**

   a. Dr. Maxwell

Plaintiff first takes issue with the ALJ's treatment of Dr. Maxwell's testimony. She argues that if the ALJ had fully credited Dr. Maxwell's testimony, which she afforded the greatest weight, she would have found that Plaintiff could not work full time. JS at 13-14.

Dr. Maxwell opined that, during the relevant period, Plaintiff could still lift and/or carry ten pounds occasionally, less than ten pounds frequently, sit for four hours, and stand/walk for one hour during the relevant period. AR 47. Dr. Maxwell characterized this as "less than sedentary," and the ALJ characterized it as "a limited range of sedentary work." AR 18, 47. The ALJ adopted this as her own RFC, crediting Dr. Maxwell's findings in this regard. AR 18.

Dr. Maxwell also opined that Plaintiff would miss more than three days

of work per month of "full-time employment" (by which it appears Dr. Maxwell meant eight-hours-a-day, five-days-a-week employment).⁷ See AR at 47, 55, 57. The ALJ did not explicitly address this portion of Dr. Maxwell's opinion, but implicitly addressed it by limiting Plaintiff to a five-hour workday. See AR 15. The ALJ also confirmed with Plaintiff that, in her past work as a research assistant, she chose which three days-a-week she worked. See AR 51. Thus, the VE opined that Plaintiff could perform her past relevant work as she actually performed it. See AR 52.

Plaintiff cites SSR 96-8 and Rollins v. Massanari, 261 F.3d 853, 859 (9th Cir. 2011), to argue that an RFC must automatically assume eight hours of work a day, five days of work a week. JS at 22-23. Plaintiff has cited to the dissent in Rollins, and in any event, the dissent merely noted that "many jobs" have as a prerequisite the ability to keep to an eight-hour a day, five-day a week schedule without accumulating too many absences. As for SSR 96-8, it states, "<u>Ordinarily</u>, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting" for "8 hours a day, for 5 days a week, <u>or an equivalent work schedule</u>" (emphasis added). Here, Plaintiff's past work required a different work schedule than 8 hours a day, 5 days a week. Cf. Stewart v. Barnhart, No. 05-02317, 2008 WL 902197, at *8 (N.D. Cal. Mar. 31, 2008) (concluding that ALJ erred by failing to discuss past relevant work's hourly requirements, which were 8 hours a day 5 days a week, where claimant could not meet those requirements).

      b.    Other Physicians

Plaintiff also contends that the ALJ failed to consider some treating physicians' opinion evidence. JS at 14-16. The ALJ gave specific and

---

⁷ Dr. Maxwell's opinion that this would make Plaintiff "unemployable" was, as Dr. Maxwell acknowledged, usurping the role of the VE. See AR 55.

legitimate reasons supported by substantial evidence for affording these opinions less weight. See Carmickle, 533 F.3d at 1164. The ALJ noted that Dr. Shabtai's opinions were not applicable to the relevant period and failed to articulate quantified limitations. AR 19. The ALJ rejected Dr. Hall's letter from 2011 because it spoke broadly of Plaintiff's condition since 2007, and Dr. Hall had not treated Plaintiff until June 2009, so the notes were not based on her work as a treating physician. Id. Furthermore, the ALJ rejected a statement allegedly completed by Dr. Palazzolo because it was actually completed by Plaintiff, which Plaintiff later admitted was true. Id.; see JS at 15.

While the ALJ did not specifically address a report by gynecologist Dr. Rapkin, the report was from one year after the relevant period had ended and failed to address Plaintiff's functional limitations. AR 806-07. Moreover, any error was harmless because Dr. Rapkin's notes were duplicative of several considered treating physician opinions. The ALJ incorporated the opinions of many treating physicians and gave specific and legitimate reasons where she discredited any treating physician opinions.

**C.   Discrediting Testimony by Plaintiff and Her Mother**

Plaintiff argues that the ALJ erred in discrediting testimony by Plaintiff and her mother. JS at 3-6.

  **1. Plaintiff's Testimony**

    a. Relevant Facts

At the hearing, Plaintiff testified that she suffered from severe pain from her endometriosis surgery, could not sleep well, and spent most days in bed. AR 39-40. She stated that though she worked part-time from home, she eventually quit because of pain and malaise following her December 2007 surgery. AR 39. In her decision, the ALJ summarized Plaintiff's complaints:

> She alleged that she wears her pajamas, and "sometimes [does not] bathe for a month" due to weakness, fatigue[,] and pain.

> She reported that she is able to feed herself and toilet herself. However, she relies on her parents to prepare her meals (although she is able to heat up food in the microwave), care for her cat, and do household chores (although she "sometimes" helps with loading and unloading the dishwasher). She reported that she spends her days on the couch or in bed watching television, and struggles with motivation. She alleged that she has "malaise and confusion" which affects her ability to pay attention and concentrate.

AR 15-16 (citations omitted).

The ALJ found that Plaintiff suffered from endometriosis and CPS based on medical records and Plaintiff's reports of worsening pelvic pain. AR 16. She noted, however, that in the summer and fall of 2008, Plaintiff failed to adhere to prescribed physical therapy following December 2007 surgeries, citing "personal issues" as her excuse. Id. The ALJ also noted that several fall and winter 2008 MRIs were unremarkable and showed "no definite magnetic imaging for endometriosis." Id. (citing Exhibit AR 520-21, 865-66). The ALJ found that "contrary to her allegations of ongoing disabling symptoms, . . . [Plaintiff] reported [in November 2008] that she was happy with her pain medications" and she was 'able to perform activities of daily living.'" Id. (citing AR 555.)

        b.    Applicable Law

Reviewing federal courts engage in a two-step analysis to determine the extent to which an ALJ must credit a claimant's symptom testimony. Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. Id. If the claimant satisfies this first step, and there is no

12

evidence of malingering, the ALJ can reject the claimant's testimony about the severity of symptoms only by offering specific, clear and convincing reasons for doing so. Id.

Plaintiff argues that the Court should apply SSR 16-3p to the ALJ's decision. See JS at 4. SSR 16-3p eliminates the term "credibility" from SSA policy and states that the "focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p took effect on March 16, 2016. The Ninth Circuit recently suggested that SSR 16-3p is consistent with Ninth Circuit case law predating that SSR. See Trevizo, 871 F.3d at 678 n.5 (noting that SSR 16-3p "makes clear what our precedent already required," i.e., that the ALJ is "not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness," but rather focus on "evaluat[ing] the intensity and persistence of [the alleged] symptoms").

    c. Analysis

Here, the ALJ found that Plaintiff presented objective medical evidence of endometriosis and CPS, which could reasonably be expected to produce her alleged pain and other symptoms. AR 16; see Lingenfelter, 504 F.3d at 1036. She did not discuss any affirmative evidence of malingering. Robbins, 466 F.3d at 883. Plaintiff contends that the ALJ discredited her subjective complaints of pain (see JS at 3-6), but that is not the case. See AR 17 ("The record generally establishes that the claimant has a longstanding history of endometriosis and chronic pain syndrome"). To a large extent, the ALJ found Plaintiff's complaints of pain "[c]onsistent with [the medical expert's] testimony," and incorporated her complaints of a "constellation of symptoms during the relevant period . . . under the severe impairment of [CPS] as well as taken into account in [the RFC] finding." AR 13. The ALJ discussed these diagnoses and considered the reported physical effects of these conditions in arriving at the

13

non-disability determination.

To the extent that the ALJ discounted Plaintiff's allegations of ongoing disabling symptoms during the relevant period (i.e., between May 1, 2008 and December 31, 2008), she gave specific, clear and convincing reasons for doing so. The ALJ noted that it was her responsibility to make a finding on the credibility of "statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms," where those claims were not substantiated by objective medical evidence. See AR 15. Contrary to Plaintiff's claim that the ALJ did not specify which testimony she found not credible (see JS at 9-10), the ALJ: (1) noted that in 2008, Plaintiff failed to follow her prescribed treatment of physical therapy but inadequately explained why (AR 16); (2) despite alleging "ongoing disabling symptoms," Plaintiff reported in November 2008 that she was happy with her pain medications and "able to function and perform activities of daily living" (id.); and (3) MRIs in 2008 conflicted with Plaintiff's reports of severe, disabling pain (id.). Plaintiff points out that during the same appointment when she claimed to be happy with her pain medication, Plaintiff also reported that her "fibromyalgia pain" was worse (see JS at 10); yet, these November 2008 notes reflect that her pain was "5/10 on avg, 1/10 best," and—most importantly—that she could perform activities of daily living, indicating that the pain was not disabling. See AR 555. The ALJ noted these inconsistencies, thus basing her credibility findings on substantial evidence. See Thomas, 278 F.3d at 959.

When taking Plaintiff's subjective testimony of her pain into account, "the ALJ is not 'required to believe every allegation of disabling pain, or else disability benefits would be available for the asking.'" Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (citation omitted). Where, as here, the ALJ points to specific evidence undermining a plaintiff's complaints, reversal or remand by a reviewing court is inappropriate. Thomas, 278 F.3d at 959.

14

## 2. Christy Saenger's Testimony

The ALJ considered a report by Plaintiff's mother, Christy Saenger. AR 18, 358-68. Ms. Saenger described Plaintiff as being in bed all day and incapable of doing nearly any chores. See AR 359-62. She recounted Plaintiff's medical history, broadly describing a period of several years. See AR 366-67. After considering Ms. Saenger's report, the ALJ determined that:

> [I]t does not establish that [Plaintiff] was disabled during the relevant period. Since she is not medically trained to make exacting observations as to dates, frequencies, types and degrees of medical signs and symptoms, or of the frequency or intensity of unusual moods or mannerisms, the accuracy of the allegations is questionable. Moreover, by virtue of the relationship as [Plaintiff's] mother, Ms. Saenger cannot be considered a disinterested third party witness whose allegations would not tend to be colored by affection for [Plaintiff] and a natural tendency to agree with the symptoms and limitations [Plaintiff] alleges. Most importantly, significant weight cannot be given to Ms. Saenger's allegations because they are simply not consistent with the preponderance of the evidence or the opinions and observations by medical doctors in this case.

AR 18.

An ALJ must consider all of the available evidence in an individual's case record, including written statements from caregivers. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1053 (9th Cir. 2006). The ALJ may discount that testimony, however, by providing "reasons that are germane to each witness." Dodrill v. Shalala, 12 F.3d 915, 919 (9th Cir. 1993); see also Valentine v. Comm'r, Soc. Sec. Admin, 574 F.3d 685, 694 (9th Cir. 2009). While an ALJ may not dismiss "wholesale" testimony of witnesses based on

family interests, considering a witness's close relationship with a plaintiff is an appropriate germane reason for discounting testimony. See Smolen, 80 F.3d at 1289; Greger v. Barnhart, 464 F.3d 968, 972 (9th Cir. 2006).

Here, the ALJ considered Ms. Saenger's statement and provided "germane" reasons for discounting it. See Valentine, 574 F.3d at 694. The ALJ discounted it because her close relationship as Plaintiff's mother likely colored her testimony and made her more likely to agree with Plaintiff's account. See AR 18; Smolen, 80 F.3d at 1289. Moreover, the ALJ validly discounted her statements as inconsistent with the record. See Bayliss v. Barnhart, 427 F.3d 1211, 1218 (9th Cir. 2005) (noting that inconsistency with medical evidence is a germane reason for discounting lay witness testimony). While Ms. Saenger described Plaintiff as debilitated, unable to leave bed, and immune to pain medication, many physicians noted pain relief through medication and physical therapy. Compare AR 368 with AR 531, 551, 555, 576. Accordingly, the ALJ gave germane reasons for discounting Ms. Saenger's testimony.

### D. **Substantial Gainful Activity**

Plaintiff claims that the ALJ erred by failing to consider whether the "special conditions" of Plaintiff's research assistant work rebutted the presumption that the work was "substantial gainful activity" ("SGA"). JS at 24. Plaintiff also argues that remand is warranted so that the ALJ can consider whether Plaintiff's pay exceeded the reasonable value of her work. Id. at 25.

#### 1. **Relevant Facts**

The ALJ determined that, between May 1, 2008, and December 31, 2008, Plaintiff was capable of performing her past relevant work as a research assistant, as actually performed. AR 19-20. As is relevant here, the ALJ found that Plaintiff's past work was performed at SGA levels. The ALJ found that Plaintiff's earnings exceeded the minimum levels for SGA, having earned $12,720.00 in 2006, $16,857.84 in 2007, and $7,336.11 in 2008. AR 20, 307.

The ALJ noted that the established SGA amounts were $860 per month in 2006, $900 per month in 2007, and $920 per month in 2008. AR 20. Plaintiff testified that she worked approximately four or five hours per day for $10 per hour until disabled. AR 38-39. The ALJ concluded that Plaintiff performed past relevant work at SGA level because payroll records demonstrated that Plaintiff earned "well above the monthly SGA level." AR 20.

### 2. Applicable Law

A job qualifies as past relevant work only if it involved SGA. See 20 C.F.R. §§ 404.1560, 404.1565. "Substantial" means "work activity that involves doing significant physical or mental activities"; work "may be substantial even if it is done on a part-time basis." 20 C.F.R. § 404.1572. "Gainful" means "work activity" done for "pay or profit." Id.

Statutory guidelines establish a presumption of SGA if the claimant earns over the amount specified in the guidelines. Keyes v. Sullivan, 894 F.2d 1053, 1056 (9th Cir. 1990); see 20 C.F.R. § 404.1574 (explaining how minimums are calculated). This presumption is rebuttable based on analysis of five factors: (1) the nature of the plaintiff's work, (2) the plaintiff's performance, (3) special conditions under which work was performed, (4) whether the plaintiff was self-employed, and (5) the amount of time that the plaintiff was able to spend working. 20 C.F.R. § 404.1573; see also Katz v. Secretary of Health and Human Servs., 972 F.2d 290, 293 (9th Cir. 1992).

With respect to the third factor, the Social Security Administration regulations specifically list six "examples" of special conditions relating to a claimant's impairment: (1) the claimant required and received special assistance from other employees in performing work; (2) the claimant was allowed to work irregular hours or take frequent rest periods; (3) the claimant was provided with special equipment or were assigned work especially suited to her impairment; (4) the claimant was able to work only because of specially

17

arranged circumstances, for example, other persons helped her prepare for or get to and from work; (5) the claimant was permitted to work at a lower standard of productivity or efficiency than other employees; or (6) the claimant was given the opportunity to work despite her impairment because of family relationship, past association with the employer, or the employer's concern for the claimant's welfare. 20 C.F.R. § 404.1573.

Finding that a claimant performed work under special conditions does not end the inquiry into whether the claimant engaged in SGA. See 20 C.F.R. § 404.1573(c) ("[W]ork done under special conditions may show that you have the necessary skills and ability to work at the substantial gainful activity level."); Sharkey v. Comm'r, SSA, 2008 WL 3289267, at *5 (D. Idaho Aug. 8, 2008) ("[N]ot all work performed under special conditions will be placed outside of the substantial gainful activity category . . . [S]pecial conditions are simply a factor for the ALJ to consider"); Abrahamson v. Astrue, No. 07–1650, 2009 WL 806622, at *6–7 (D. Ariz. Mar. 26, 2009) ("The mere fact that [plaintiff] engaged in SGA under special conditions is not dispositive of whether Plaintiff is in fact disabled.").

### 3. Analysis

Plaintiff averaged $1,060 per month earned in 2006 and $1,404.82 per month earned in 2007 from employment with her father's company. See AR 317. Presumably, the $7,336.11 earned in 2008 (see id.) represents Plaintiff's earnings from January 1, 2008 through April 30, 2008, because Plaintiff alleged disability beginning on May 1, 2008. Thus, Plaintiff earned approximate $1,834 per month in 2008 until she no longer worked.

Plaintiff does not contest that these amounts surpassed the minimum levels for SGA. Rather, Plaintiff argues that the ALJ had a duty to consider explicitly whether "special conditions" rebutted the SGA presumption. Plaintiff cites no law requiring that an ALJ must specifically state its findings

in this regard, but district courts have remanded on this basis. See, e.g., Carrillo v. Colvin, No. 12-1537, 2013 WL 816675, at *4-5 (C.D. Cal. Feb. 25, 2013) (remanding where ALJ did not address whether evidence of "special circumstances" rebutted SGA presumption, where plaintiff worked for 3 years as care provider for her mother with no set schedule or hours requirement).

Nonetheless, the Court concludes that here, if there was error in failing to address specifically the "special conditions" of Plaintiff's employment, it was harmless. There is no indication that Plaintiff was "permitted to work at a lower standard of productivity" or was "given the opportunity to work despite [her] impairment because of family relationship." See 20 C.F.R. § 404.1573. While Plaintiff's work arrangement was no doubt unusual, the record does not suggest that she was not qualified for the job, that she did not perform it well, or that her father would have required another person in her position to work from a specific office or during specific hours. Moreover, not all work performed under special conditions fall outside of the substantial gainful activity category. Special conditions are simply a factor for the ALJ to consider and, in fact, "work done under special conditions may show that [a claimant has] the necessary skills and ability to work at the substantial gainful activity level." 20 C.F.R. § 404.1573(c).

As for Plaintiff's "subsidy" argument, it is misplaced. SSR 83-33 states that "subsidized earnings" should be subtracted from earnings used to determine SGA. That SSR notes that an employer "may, because of a benevolent attitude toward a handicapped individual, subsidize the employee's earnings by paying more in wages than the reasonable value of the actual services performed." The following circumstances indicate the strong possibility of a subsidy: (1) the employment is "sheltered;" (2) childhood disability is involved; (3) mental impairment is involved; (4) there appears to be a marked discrepancy between the amount of pay and the value of the

services; (5) the employer, employee, or other interested party alleges that the employee does not fully earn his or her pay (e.g., the employee receives unusual help from others in doing the work); (6) the nature and severity of the impairment indicate that the employee receives unusual help from others in doing the work; or (7) the employee is involved in a government-sponsored job training and an employment program.

Here, Plaintiff received $10 an hour for research assistant services provided over several years to her father, an executive recruiter, researching resumes for him to consider. See AR 38. This arrangement does not indicate a marked discrepancy between Plaintiff's pay and the value of her services, and none of the other SSR 83-33 factors apply.

## III.
## CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED and the action is DISMISSED with prejudice.

Dated: January 11, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge